# In the United States Court of Federal Claims

No. 07-581 C

(October 31, 2007)[1]

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * | * | |
| AEOLUS SYSTEMS, LLC, | * | |
| | * | |
| *Plaintiff*, | * | Pre-Award Bid Protest; Small |
| | * | Business Administration |
| v. | * | Qualification of Historically |
| | * | Underutilized Business Zone |
| THE UNITED STATES, | * | Small Business Concerns; |
| | * | Definition of the Term |
| *Defendant*, | * | "Employee" in 13 C.F.R. |
| | * | § 126.103 (2007); Deference to |
| GLOBAL SOLUTIONS | * | Agency Interpretation of |
| NETWORK, INC., | * | Regulation. |
| | * | |
| *Intervenor-defendant*. | * | |
| * * * * * * * * * * * * * * * | * | |

*H. James Lentz*, Palm Harbor, FL, for plaintiff.

*Anuj Vohra*, United States Department of Justice, with whom were *Peter D. Keisler*, Assistant Attorney General, *Jeanne E. Davidson*, Director, *Mark Melnick*, Assistant Director, Washington, DC, for defendant. *Beverley Hazlewood Lewis*, United States Small Business Administration, Washington, DC, of counsel.

*Gerald H. Werfel*, Alexandria, VA, for intervenor-defendant.

---

[1]/ This opinion was issued under seal on September 27, 2007. Pursuant to ¶ 3 of the ordering language, the parties were invited to identify proprietary material subject to deletion on the basis that the material was protected/privileged. The parties conferred and proposed no redactions. Thus, the sealed and public versions of this opinion are identical, except for the publication date and this footnote.

## OPINION

**Bush**, *Judge*.

This pre-award bid protest is before the court on cross-motions for judgment on the administrative record filed under Rule 52.1 of the Rules of the United States Court of Federal Claims (RCFC). In this case, plaintiff Aeolus Systems, LLC (Aeolus) challenges the United States Small Business Administration's (SBA) determination that Aeolus was not a qualified Historically Underutilized Business Zone (HUBZone) small business concern. The SBA's decision led to the cancellation of a contract awarded to Aeolus by the United States Department of the Army (Army) in 2006, which the Army intends to award shortly after this opinion is issued. Plaintiff argues that the SBA's decision was improper and must be overturned.

The court ordered an expedited briefing schedule to quickly resolve this protest on the merits. The administrative record in this matter was filed on August 17, 2007. Plaintiff filed a Motion for Judgment on the Administrative Record on August 23, 2007.[2] The United States (defendant) and Global Solutions Network, Inc. (intervenor-defendant) (collectively, defendants) filed cross-motions for judgment on the administrative record on August 31, 2007. Plaintiff filed a reply on September 7, 2007, and defendants replied on September 14, 2007. Discovery was not requested by the parties, and oral argument was not required by the court.[3] For the reasons that follow, the court finds that plaintiff's challenge to the SBA's decision is without merit. Plaintiff's motion is denied and defendants' motions are granted.

---

[2]/ Plaintiff filed an amended version of its motion on September 19, 2007 by leave of the court, correcting minor errors in its initial motion. The court cites to the amended version of the motion in this opinion.

[3]/ Plaintiff filed a motion to request oral argument on September 19, 2007. This motion was denied as untimely, for the reasons stated in the court's Order of September 21, 2007.

## BACKGROUND

On July 21, 2006, the U.S. Army Contracting Agency (ACA), Capital District Contracting Center (CDCC) issued Solicitation W91QV1-06-R-0031. AR at 79. The solicitation requested proposals for a contract to "provide . . . Communications and IT Staff Support to the . . . [Army] HRsolutions Program Office." *Id.* at 123. More specifically, these services were to include "business development, awareness, IT, and publications support for the HR[s]olutions Program Office of the U.S. Army." Pl.'s Mot. at 1 n.1. The solicitation explained that the proposed contract had been set aside for eligible HUBZone small business concerns. AR at 79.

The Army received three proposals in response to the solicitation. One of these proposals was submitted by Aeolus, a Florida corporation which had been certified by the SBA as an eligible HUBZone concern in 2004. On December 22, 2006, the Army awarded Contract No. W91QV1-06-R-0031 (the contract) to Aeolus. AR at 1020. Soon thereafter, two unsuccessful offerors filed protests with the Army which challenged Aeolus's eligibility for a HUBZone award.[4] The protestors made numerous allegations regarding Aeolus's HUBZone eligibility. Most importantly, they claimed that plaintiff's employees did not reside within a HUBZone, which is a prerequisite to participation in the HUBZone program. The Army promptly forwarded the two protests to the SBA for resolution.

On January 24, 2007, the SBA notified Aeolus's CEO, Mr. Joseph Philipose, of the challenges to plaintiff's award. AR at 1916. With the notice, the agency directed Aeolus to submit documentation establishing, among other things, "that at least 35% of its employees resided in a HUBZone at the time it submitted its initial offer (August 21, 2006) and final offer (September 19, 2006) for the . . . solicitation, and on the date of contract award (December 22, 2006)."[5] *Id.* at 1917. Specifically, the SBA requested "payroll records showing all employees and number of hours worked per week at the time offers were submitted and at the time

---

[4]/ One of the protestors, Global Solutions Network, Inc., is the intervenor-defendant in this suit.

[5]/ The date of Aeolus's final offer is variously reported in the Administrative Record, but appears to be some date between September 19, 2006 and September 27, 2006. This variance is not material.

of contract award." *Id.* at 1918. In a response dated January 29, 2007, plaintiff stated that Mr. Philipose and one other employee, Mr. Rode Louisa, worked full time at Aeolus's principal office location, and that payroll reports for August 21, 2006, September 19, 2006 and December 22, 2006 were included with its correspondence. *Id.* at 1855.

On February 5, 2007, the SBA replied to Aeolus's letter by e-mail, and pointed out that plaintiff had not, in fact, submitted payroll information for August 21, 2006 or September 26, 2006. *Id.* at 1823. In its e-mail response, plaintiff acknowledged that omission and stated that, because of a "financial problem," Aeolus had not "run a pay roll" from August 2006 through December 2006. *Id.* at 1822. Plaintiff explained that "[r]ecognizing Aeolus Systems['] financial concerns and fully expecting success before long, Rode Louisa volunteered to defer his remaining 2006 salaries until 2007." *Id.* The e-mail included a copy of a hand-written letter from Mr. Louisa, dated August 8, 2006, in which Mr. Louisa wrote that he was "willing to work for a [deferred] salary." *Id.* at 1825. On the bottom of the letter, in different handwriting, a message signed by Mr. Philipose stated that he thanked Mr. Louisa for his offer, and that Mr. Philipose "personally guaranteed" Mr. Louisa's wages. *Id.* Aeolus's response e-mail also stated that plaintiff had received a Navy contract in 2006 and that "Aeolus Systems has been in a position to pay back the deferred salary to Rode Louisa. Aeolus Systems started running payroll in December 2006. At this time, salary payments to Rode Louisa resumed." *Id.* at 1822.

On February 15, 2007, the SBA determined that plaintiff was not a qualified HUBZone concern at the time Aeolus submitted its initial and final offers in response to the solicitation, and therefore Aeolus was not eligible for the Army contract. *Id.* at 1808. In the decision, which was signed by the SBA's Associate Administrator for the HUBZone Contracting Program (AA/HUB), Mr. Michael McHale, the SBA explained that Aeolus had not complied with 13 C.F.R. § 126.200(b)(4) (2007), which requires that at least 35% of a HUBZone small business concern's employees reside in a HUBZone. In the decision, the AA/HUB explained that

> Aeolus claims that it had two employees at the relevant times, including the owner. The owner does not reside in a HUBZone, so Aeolus's HUBZone eligibility hinges on the employment status of the other individual. Initial

offers for the subject contract were submitted on August 21, 2006, and final offers were submitted on September 26, 2006. Aeolus claims that it did not have a payroll from August 21 through November due to a lack of funds. Aeolus claims that beginning in August both Aeolus employees deferred their compensation, and that each was eventually compensated in December. While SBA has considered owners who work 30 hours or more for a concern to meet the HUBZone definition of an employee even though they do not receive salary or wages, we decline to allow non-owners who defer compensation to be counted as employees under the HUBZone definition. It is certainly understandable that an owner of a small business would work for the business entity without receiving a salary or wages. The owner has an expectation that his or her work will increase the value of his or her ownership interest in the entity, and the owner may also be compensated in other ways, such as through dividends or distributions. However, we find it implausible that a non-owner would work for several months or more without compensation. In this case, the individual in question agreed to defer his compensation for over a year, although Aeolus claims that this was not necessary and the individual received the deferred compensation in December, 2006. In our view, allowing a non-owner individual who works for deferred compensation to be counted as an employee for HUBZone program purposes would open the HUBZone program up to potential abuse. We have no way to verify whether such employees are ever actually paid. Further, the concept of employees who defer compensation is directly contrary to the intent and purpose of the HUBZone definition program, which is to increase gainful employment in HUBZones, not speculative promises of future compensation that may not be paid. Thus, under the totality of the circumstances, we find that the alleged non-owner employee was not an employee for HUBZone program purposes at the time of initial or final

> offer. Consequently, Aeolus did not meet the 35 percent HUBZone residency requirement at the time of its initial and final offer for this contract.

AR at 1810. Accordingly, the agency sustained the pending protests, and declared Aeolus ineligible for the HUBZone award.

On February 20, 2007, plaintiff appealed the SBA's decision to the agency's Associate Deputy Administrator for Government Contracting and Business Development, Mr. Anthony Martoccia. Mr. Martoccia affirmed the AA/HUB's decision on March 12, 2007, finding that "[g]iven the fact that the regulation provides in part that 'the totality of the circumstances' will determine whether a person is an employee, and that the regulation is silent on how an individual in non-pay status should be treated, I believe that the AA/HUB's decision in this case is reasonable and not erroneous." *Id.* at 1730. This decision also noted that it constituted the "final agency decision" on the matter. *Id.* at 1731.

Shortly thereafter, the Army announced its intent to cancel the award to Aeolus and to re-award the contract. *See* AR at 1125. Plaintiff responded by filing a suit in the United States District Court for the Middle District of Florida, on March 30, 2007. That suit was transferred to this court on August 1, 2007, and plaintiff filed its amended bid protest complaint on August 14, 2007.

## DISCUSSION

### I. Jurisdiction

As stated, this is a pre-award bid protest action.[6] The Tucker Act provides the United States Court of Federal Claims with bid protest jurisdiction. 28 U.S.C. § 1491(b)(1)-(4) (2000); *Am. Fed'n of Gov't Employees, AFL-CIO v. United*

---

[6]/ This protest functions as a pre-award protest of the Army's upcoming decision to award this contract to a HUBZone-qualified offeror, by plaintiff Aeolus, the contract awardee whose award was cancelled. Because this protest follows an award, albeit a cancelled one, this protest could also be described as a post-award protest. In any case, this court has jurisdiction over both post- and pre-award bid protests, and has expedited briefing in the subject matter to accommodate the parties' interests in resolving this dispute before the Army once again awards the contract.

*States*, 258 F.3d 1294, 1300 (Fed. Cir. 2001); *Hunt Bldg. Co. v. United States*, 61 Fed. Cl. 243, 268-69 (2004). The statute explicitly provides that this court "shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). The statute also states that the Court of Federal Claims "shall have jurisdiction to entertain such an action without regard to whether suit is instituted before or after the contract is awarded." *Id.* Accordingly, this court has jurisdiction to entertain this bid protest.

## II. Standards of Review

### A. Judgment on the Administrative Record

RCFC 52.1 provides for judgment on the administrative record. To review a motion, or cross-motions, under RCFC 52.1, the court asks whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005). The court must make fact findings where necessary. *Id.* The resolution of RCFC 52.1 cross-motions is akin to an expedited trial on the paper record. *Id.*

### B. Bid Protest Review

It is well settled that "this court's review of an agency's decision regarding a contractual solicitation or award takes place in accord with standards set forth in the Administrative Procedure Act, 5 U.S.C. § 706." *Asia Pac. Airlines v. United States*, 68 Fed. Cl. 8, 19 (2005); *ViroMed Labs., Inc. v. United States*, 62 Fed. Cl. 206, 211 (2004); *see also* 28 U.S.C. § 1491(b)(4) (2000) ("In any action under this [bid protest] subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5."); *Bannum*, 404 F.3d at 1351 (stating that "the trial court [first] determines whether . . . the government's conduct fails the APA review under 5 U.S.C. § 706(2)(A)"). Accordingly, the court must determine whether the contracting agency's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (2000); *Bannum*, 404 F.3d at 1351; *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1057 (Fed. Cir. 2000). The plaintiff bears the

burden of proving the arbitrary and capricious nature of the award decision, by a preponderance of the evidence. *Hunt Building*, 61 Fed. Cl. at 269; *see also Grumman Data Sys. Corp. v. Dalton*, 88 F.3d 990, 1000 (Fed. Cir. 1996) (citation omitted). "Under an arbitrary or capricious standard, the reviewing court should not substitute its judgment for that of the agency, but should review the basis for the agency decision to determine if it was legally permissible, reasonable, and supported by the facts." *ViroMed Laboratories*, 62 Fed. Cl. at 212 (citing *Motor Vehicle Mfrs. Ass'n of the United States v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). The court should overturn the challenged decision only if "'(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" *Banknote Corp. of Am. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004) (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)); *see also Hunt Building*, 61 Fed. Cl. at 269. Essentially,

> [w]hen a challenge is brought on the first ground, the test is whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a heavy burden of showing that the award decision had no rational basis. When a challenge is brought on the second ground, the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations.

*Banknote*, 365 F.3d at 1351 (internal quotations omitted) (citing *Impresa*, 238 F.3d at 1332-33).

If it is determined that a contract was awarded in violation of APA standards, the court must then evaluate whether the plaintiff, as an unsuccessful bidder, was significantly prejudiced by the government's conduct. *Bannum*, 404 F.3d at 1353. Indeed, in order to prevail in a bid protest, a claimant must provide evidence of "'not only a significant error in the procurement process, but also that the error prejudiced it.'" *Galen Med. Assocs., Inc. v. United States*, 369 F.3d 1324, 1330 (Fed. Cir. 2004) (quoting *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1562 (Fed. Cir. 1996)). This requires evidence of a "substantial chance" that the protestor would have received the contract award, but for the alleged error or errors. *Id.* at 1331 (citation omitted); *see also Emery Worldwide Airlines, Inc. v.*

*United States*, 264 F.3d 1071, 1086 (Fed. Cir. 2001) ("To establish prejudice in an action involving an alleged statutory or regulatory violation, a protester must show that absent the error, 'there was a substantial chance it would have received the contract award.'") (quoting *Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367 (Fed. Cir. 1999)).

## III. Merits

In this case, Aeolus was disqualified for award because it failed to satisfy the HUBZone program requirement that at least 35% of its employees reside in a HUBZone. *See* 13 C.F.R. § 126.200(b)(4). The record is uncontroverted that, at the time of its initial and final offers for the Army contract, Aeolus had two putative employees, Mr. Philipose and Mr. Louisa. Because Mr. Philipose did not live in a HUBZone, Aeolus's program eligibility depended completely on Mr. Louisa's status. The parties agree that Mr. Louisa lived in a HUBZone at all relevant times. On the dates at issue, however, Mr. Louisa had agreed to "defer" his compensation. Based on that arrangement, the SBA held that Mr. Louisa was not an "employee" of Aeolus as that term is defined in the HUBZone regulations, and that his place of residence could not be relied upon to satisfy the 35% residency requirement.[7] AR at 1810 ("[W]e decline to allow non-owners who defer compensation to be counted as employees under the HUBZone definition.").

Plaintiff argues that this finding by the SBA was arbitrary and capricious, an abuse of discretion, and otherwise contrary to law; that it violated 41 U.S.C. § 253b (2000), which requires agencies to evaluate proposals based only on the factors set forth in the relevant solicitation; and, that it violated the APA requirement that the SBA amend HUBZone regulations only through formal agency rulemaking.[8] Plaintiff asks the court to issue a declaratory judgment that Aeolus was eligible for the HUBZone contract at all times relevant to this procurement, and an injunction instructing the Army to reinstate its award. In response, the United States argues

---

[7]/ The United States pointed out, in its motion, that Aeolus never provided the SBA with evidence that Mr. Louisa was ultimately paid for the work he performed during the time in which his salary had been deferred. Def.'s Mot. at 14. The government does not, however, appear to challenge plaintiff's assertion that those payments were, in fact, made.

[8]/ The court has endeavored to accurately summarize plaintiff's arguments in this opinion. This task was complicated by the sparse citation of authority and the brevity of certain arguments in plaintiff's briefs. This is due, perhaps, to the expedited briefing schedule required by this bid protest.

that the agency's decision was reasonable, that it protected and promoted the underlying purposes of the HUBZone program, and that the decision must be upheld.

The HUBZone program, which is at the center of this dispute, was created by the HUBZone Act of 1997, Pub. L. No. 105-135, 111 Stat. 2592, 2627-36 (codified, as amended, at 15 U.S.C. §§ 637, 657a (2000), and other scattered sections of the United States Code). According to the statute's implementing regulations, "[t]he purpose of the HUBZone program is to provide federal contracting assistance for qualified SBCs [(small business concerns)] located in historically underutilized business zones in an effort to increase employment opportunities, investment, and economic development in such areas. 13 C.F.R. § 126.100 (2007); *Diversified Maint. Sys., Inc. v. United States*, 74 Fed. Cl. 122, 123 n.3 (2006). A "HUBZone" is defined as any area which is located within one or more qualified census tracts, qualified nonmetropolitan counties, lands within the external boundaries of an Indian reservation, redesignated areas, or base closure areas. 15 U.S.C. § 632(p)(1)-(2) (2000). To participate in the HUBZone program, a company must have a principal office in a qualified location; a particular type of business structure; an appropriate size as determined by the SBA; and an eligible workforce. *Diversified Maintenance*, 74 Fed. Cl. at 123 (citing 15 U.S.C. § 632(a)(2) (2000); 15 U.S.C. § 632(p)(1), (3), (4) (2000); 15 U.S.C. § 632(p)(5)(A)(i)(I)(aa) (2000)); *Metro Mach. Corp. v. United States Small Bus. Admin.*, 305 F. Supp. 2d 614, 616 (E.D. Va. 2004) ("By statute, in order to be certified as a qualified HUBZone SBC, a small business must be exclusively owned and controlled by United States citizens, have its principal office located in a HUBZone, and at least 35% 'of its employees' must reside in a HUBZone.") (citing and quoting 15 U.S.C. § 632(p)(3)(A), (p)(5)(A)(i)(I)(aa)).

There is no question that the SBA is charged with administering the HUBZone program. Indeed, "Congress has unambiguously delegated to the SBA Administrator the task of determining a contractor's qualified HUBZone status." *Diversified Maintenance*, 74 Fed. Cl. at 126 (citations omitted); *see also Shirlington Limousine & Transp., Inc. v. United States*, 77 Fed. Cl. 157, 158 n.2 (2007) (citing 48 C.F.R. § 19.1303(a) (2006)). After a company is certified by the SBA, and its name appears on the SBA's list of qualified HUBZone concerns, the company is eligible for program preferences, including HUBZone set-asides, HUBZone sole source awards, and HUBZone price evaluation preferences. *Delaney Constr. Corp. v. United States*, 56 Fed. Cl. 470, 474-75 (2003) (citations

omitted). Congress has further charged the SBA with responsibility for establishing "procedures relating to[] the filing, investigation, and disposition by [the SBA] of any challenge to the eligibility of a small business concern to receive assistance under" the program. 15 U.S.C. § 657a(c)(1)(A); *Metro Machine*, 305 F. Supp. 2d at 616.

## A. Reasonableness of the SBA's Interpretation of the Term "Employee" in 13 C.F.R. § 126.103

Plaintiff claims that the SBA erred in finding, in this case, that Mr. Louisa was not an "employee" of Aeolus under 13 C.F.R. § 126.103 (2007).[9] The regulation provides, in relevant part, as follows:

> *Employee* means a person (or persons) employed by a HUBZone SBC on a full-time (or full-time equivalent), permanent basis. Full-time equivalent includes employees who work 30 hours per week or more. Full-time equivalent also includes the aggregate of employees who work less than 30 hours a week, where the work hours of such employees add up to at least a 40 hour work week. The totality of the circumstances, including factors relevant for tax purposes, will determine whether persons are employees of a concern. Temporary employees, independent contractors or leased employees are not employees for these purposes.

13 C.F.R. § 126.103.

To show that the agency's interpretation of 13 C.F.R. § 126.103 was arbitrary, Aeolus argues that the interpretation contradicted the plain language of the regulation, because "[n]owhere in the definition does the regulation hint at a possibility that when an employee is paid could disqualify him/her and the SBC from the HUBZone program." Pl.'s Mot. at 10. Plaintiff asserts that the definition "does not address pay of employees, nor, in fact, does it address when an employee

---

[9]/ The HUBZone statute does not define the term "employee." *See Metro Machine*, 305 F. Supp. 2d at 616 (citing 15 U.S.C. § 632(p)(3)(A), (p)(5)(A)(i)(I)(aa)).

is to be paid; how much to pay; the manner of payment (check, cash, money order) or any other criterion when defining a 'HUBZone employee.'" *Id.* at 12. Aeolus contends further that the SBA also erred when it ignored the analytical guidance included in the regulation's text. Plaintiff points out that although the regulation directly addresses "factors relevant for tax purposes," the SBA did not examine such factors in reaching its conclusion. *Id.* at 11, 13. In fact, Aeolus complains that the AA/HUB "failed to apply any of the well-recognized tests for determining if an individual is an employee." *Id.* at 13. Plaintiff additionally argues that the agency abused its discretion, because, in interpreting the regulation to determine who is an "employee" for HUBZone purposes, the AA/HUB should have tailored his findings by focusing only on the three categories of workers explicitly excluded from the definition of an "employee" by the regulation's text. *Id.* at 16 (noting that temporary employees, independent contractors and leased employees are explicitly excluded from the definition of employee by 13 C.F.R. § 126.103). For all of these reasons, Aeolus claims that the SBA improperly interpreted its own regulation.[10] *Id.* at 9-10.

In addition, as a matter of policy, plaintiff contends that, were the agency's decision to stand, it would impede the right of workers to enter into creative pay arrangements with employers, in cases in which they choose to do so and such agreements would permit them to secure gainful employment. Pl.'s Reply at 5. In plaintiff's view, "[t]he SBA's decision to disqualify a HUBZone contractor simply because of an employment contract containing a deferred payment plan without defining what . . . payment schedule is acceptable defeats the purpose of the legislation which created the program." *Id.* at 5-6. Plaintiff also claims that the SBA could easily permit workers who receive deferred compensation to be counted as employees without creating any enforcement problems for the agency. Aoleus points out that the SBA is empowered to request payroll information from HUBZone concerns, and could do so to confirm payment in such instances. *Id.* at 6. Plaintiff also contends that the AA/HUB's decision fails to promote the underlying purposes of the HUBZone program as described in the legislative history, pointing out that "[n]owhere in Congress' comments . . . is [there a]

---

[10]/ Plaintiff finds further fault with the SBA's interpretation of its regulation, alleging that it is impermissibly vague, Pl.'s Reply at 8, an argument which can most logically be discussed in section III(C) of this opinion, *infra*. This argument focuses largely on the validity of the SBA's decision, if the SBA's decision were to be considered a *de facto* regulation.

requirement that employees be paid contemporaneously." Pl.'s Reply at 4 (internal quotations omitted).

In response to these contentions, defendant argues broadly that the SBA's decision in this case was "a reasonable interpretation of the regulation that effectuates the intent of the legislature in creating the program and protects it against abuse." Def.'s Mot. at 13. The United States contends, in other words, that the SBA's decision was proper in light of the history and purpose of the HUBZone program. In support of this claim, defendant asserts that the concept of deferred compensation is contrary to the HUBZone program's goal, which is "'to increase gainful employment in HUBZones, not speculative promises of future compensation that may not be paid.'" *Id.* at 15 (quoting AR at 1810). The government states that "Congress' clear intent behind the HUBZone program was to revitalize . . . economically distressed areas. Such revitalization requires that persons living in HUBZones are not only employed, but are also being paid contemporaneously with that employment so that monies can be put back into those areas." *Id.* Defendant further points out that the SBA's additional justification for its decision, *i.e.*, its reasoning that to count non-owner individuals who work for deferred compensation as "employees" would open the program up to abuse, also comports with congressional intent. According to defendant,

> [i]f a HUBZone SBC were allowed to utilize non-owner deferred compensation plans to satisfy the program's employee requirement, a company could establish its qualified status for purposes of the program simply by entering into one or multiple deferred compensation plans with one or multiple non-owner employees to pass SBA scrutiny, be awarded that contract, and simply not honor that agreement. SBA would be unable to ensure that money was being funneled back into those HUBZone communities. SBA's decision refusing to recognize non-owner employee deferred compensation agreements prevents such an unjust result.

*Id.* at 16.

Next, the United States argues that the SBA's determination was a reasonable interpretation of the agency's own regulation, and is therefore entitled

to substantial deference from the court. *Id.* at 13, 17. Defendant underscores the fact that 13 C.F.R. § 126.103 explicitly directs the SBA to consider "the totality of the circumstances" when determining "employee" status, a fact which indicates that the agency reserved broad discretion to itself regarding that issue. *Id.* at 21. The government also notes that, although plaintiff faults the SBA for failing to consider "factors relevant for tax purposes" and the generally accepted "tests" which focus on such factors, Aeolus can cite no authority which requires the SBA to do so in all cases. Def.'s Mot. at 23 (citing *Metro Machine*, 305 F. Supp. at 624). Moreover, defendant contends, those tests are typically used to determine whether one is an employee or an independent contractor, a distinction which is not relevant to the underlying facts in this case. *Id.*

Finally, defendant disagrees with Aeolus's contention that the SBA's decision was an abuse of discretion because the agency looked beyond the categories of non-employees listed in the text of the regulation and disqualified Mr. Louisa on different grounds:

> [t]here is no indication from the plain language of the regulation . . . that those three categories of employees identified in 13 C.F.R. § 126.103 w[ere] intended to be exclusive, or that SBA is required to accept all other types of employees to satisfy the "employee" requirement for HUBZone program purposes. Instead, just the opposite is true. Though the regulation specifically identifies three types of employees that cannot be included for HUBZone employee status, it also grants SBA broad discretion by noting that the "totality of the circumstances" will be considered for purposes of determining whether an individual is an employee. If the regulation intended to exclude *only* those types of employees explicitly identified, the regulation's mandate that SBA consider the "totality of the circumstances" . . . would be superfluous.

Def.'s Mot. at 26 (emphasis in original).

The parties agree that, in this case, "the SBA is interpreting its own regulations, promulgated for the purpose of implementing 15 U.S.C.A.

§§ 632(p)(3)(A) and (p)(5)(A)(i)(I)(aa) . . . under the HUBZone Act." Pl.'s Mot. at 9. Indeed, there is no question that the SBA promulgated 13 C.F.R. § 126.103 "through the notice-and-comment rule making procedures of the Administrative Procedure Act," pursuant to its congressionally mandated authority to administer the provisions of the Small Business Act. *See* Pl.'s Mot. at 12. This is critical because, "[a]s a general rule, [the court] must defer to an agency's interpretation of the regulations it promulgates, as long as the regulation is ambiguous and the agency's interpretation is neither plainly erroneous nor inconsistent with the regulation." *Gose v. United States Postal Serv.*, 451 F.3d 831, 836 (Fed. Cir. 2006) (citations omitted). In fact, the court must "defer even more broadly to an agency's interpretations of its own regulations than to its interpretation of statutes, because the agency, as the promulgator of the regulation, is particularly well suited to speak to its original intent in adopting the regulation."[11] *Id.* at 837 (citing *Cathedral Candle Co. v. United States Int'l Trade Comm'n,* 400 F.3d 1352, 1363-64 (Fed. Cir. 2005) and *Am. Express Co. v. United States*, 262 F.3d 1376, 1382-83 (Fed. Cir. 2001)). Accordingly, "an agency's interpretation of its own regulation is 'controlling' unless 'plainly erroneous or inconsistent with' the regulations being interpreted." *Long Island Care at Home, Ltd. v. Coke*, 127 S. Ct. 2339, 2349 (2007) (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997)) (internal quotations omitted). Deference is required even if an alternative interpretation of the regulation might comport with the regulatory language more closely than does the interpretation of the agency. *Gose*, 451 F.3d at 837 (citation omitted); *see also Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 515 (1994) ("The Secretary's interpretation . . . is far more consistent with the regulation's unqualified language than the interpretation advanced by petitioner. But even if this were not so, the Secretary's construction is, at the very least, a reasonable one, and we are required to afford it 'controlling weight.'" (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945))).

Here, the parties agree that both the HUBZone statute and the SBA's implementing regulations are silent on the question of whether workers who receive deferred compensation are "employees" for purposes of the HUBZone program. Indeed, the regulation which defines the term "employee" fails to

---

[11]/ It is well-settled that "considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer." *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984) (citations omitted); *C & G Excavating, Inc. v. United States*, 32 Fed. Cl. 231, 239 (1994).

address that topic altogether. Because the relevant sources of law are ambiguous regarding the issue presented in this protest, the court must defer to the SBA's interpretation, so long as it is not inconsistent with the regulation, or plainly erroneous. *Long Island Care at Home*, 127 S. Ct. at 2349.

Aeolus's first contention is that the SBA's decision somehow contradicted the plain language of 13 C.F.R. § 126.103, because the decision centered on an issue not addressed in the text of the regulation. In the court's view, however, the fact that the SBA does not address the issue of deferred compensation in the regulation itself does not demonstrate that the agency intended to preclude consideration of that issue altogether. To the contrary, because the regulation is ambiguous on that point, the SBA was entitled to interpret the regulation in order to address the issue and thus, answer the question presented in the protests before it. The SBA's findings were not inconsistent with 13 C.F.R. § 126.103, but instead, presented an authorized interpretation of its text. That interpretation is now entitled to substantial deference from the court, so long as it is not inconsistent or erroneous. *Long Island Care at Home*, 127 S. Ct. at 2349.

Plaintiff also complains that the SBA's decision was erroneous because it was not based on "precedent [and] guidance," given the regulation's silence on the issue of deferred compensation. Pl.'s Mot. at 14. The law is clear, however, that "[l]egitimate agency interpretations may be made even during the very administrative determination that has become the subject of review." *Gose*, 451 F.3d at 838 (citation omitted); *Cathedral Candle*, 400 F.3d at 1364 (stating that a "generous degree of deference is due to an agency interpretation of its own regulations even when that interpretation is offered in the very litigation in which the argument in favor of deference is made") (citations omitted). This case clearly presented an issue of first impression for the SBA, and there is no evidence that the agency failed to conduct a reasoned consideration of the issues presented therein. *See Long Island Care at Home*, 127 S. Ct. at 2349 (stating that the deferential standard applies when the agency's "action indicates that the interpretation of its own regulation reflects considered views"). Indeed, as previously discussed, the SBA engaged in careful consideration in reaching its determination that: (1) the concept of deferred compensation is contrary to the program's goal of increasing gainful employment in HUBZones, and (2) the identification of non-owner individuals who work for deferred compensation as "employees" would open up the HUBZone program to potential abuse.

Aeolus claims that the SBA abused its discretion by deeming Mr. Louisa a non-employee for HUBZone purposes even though he was not one of the three types of workers specifically excluded from coverage by the regulation's text. *See* 13 C.F.R. § 126.103 ("Temporary employees, independent contractors or leased employees are not employees for these purposes."). However, that argument fails to account for the regulation's directive that "the totality of the circumstances" will determine one's status as a putative employee. The court agrees with defendant that, if the SBA were only entitled to exclude workers who fell within the categories mentioned in the regulatory definition of "employee," the language referring to the "totality of the circumstances" would have no discernable effect on the meaning of the regulation. To interpret the regulation in such a manner would be improper, as the court must "attempt to give full effect to all words contained within th[e] statute or regulation, thereby rendering superfluous as little of the statutory or regulatory language as possible." *Glover v. West*, 185 F.3d 1328, 1332 (Fed. Cir. 1999).

A contention that the SBA erred by looking beyond "factors relevant for tax purposes" when making its decision is equally unavailing. Section 126.103 does, of course, identify "factors relevant for tax purposes" as one means by which the SBA may determine whether a person is an "employee." However, the plain language of the regulation merely identifies those factors as one analytical tool at the disposal of the agency, not the *only* tool which may be used. 13 C.F.R. § 126.103 ("The totality of the circumstances, *including* factors relevant for tax purposes, will determine whether persons are employees of a concern.") (emphasis added). Because the regulation called for a broad review of the totality of the circumstances, the SBA's decision to examine Mr. Louisa's deferred compensation pursuant to and in accordance with that clause was clearly permissible.

Plaintiff also claims that the SBA erred by failing to consider "factors relevant for tax purposes." The plain language of the regulation does not, however, require that those factors be examined by the SBA in all cases. 13 C.F.R. § 126.103 ("The totality of the circumstances, including factors relevant for tax purposes, will determine whether persons are employees of a concern."). The regulation contains no mandating terms such as "must" or "shall," but instead, uses language which, read in context, affords the agency discretion to make case-by-case determinations. It is true that the regulation does not use the term "may," which would have clearly indicated the permissive nature of the instruction to consider "factors relevant for tax purposes." The SBA appropriately exercised

discretion to interpret its own regulation when it deemed the instruction to be permissive rather than mandatory. The broad, flexible language in the remainder of the provision indicates that this interpretation is not inconsistent or plainly erroneous, and is entitled to substantial deference. *Long Island Care at Home*, 127 S. Ct. at 2349.

Further, as defendant correctly points out, Aeolus has identified no outside source of law which mandates that the SBA make such an inquiry. Plaintiff appears to rely on the district court's decision in *Metro Machine*, 305 F. Supp. 2d at 618-19, to show that consideration of "factors relevant for tax purposes" was required here. It is true that in *Metro Machine*, the SBA evaluated a plaintiff corporation's HUBZone eligibility and the status of its putative employees using an eleven factor test focused on tax-related issues, and the court upheld the SBA's analysis as consistent with 13 C.F.R. § 126.103. However, no part of the court's decision in *Metro Machine* held, or even implied, that use of those factors was necessarily required. To the contrary, the court noted that the SBA had utilized some, but not all, of the eleven tax-related factors to reach its decision, and that fact did not detract from the validity of the SBA's decision. *Metro Machine*, 305 F. Supp. 2d at 619 ("Using *some* of the eleven factors, SBA determined that employees of Metro On-Call should be counted as employees of Metro Machine for purposes of the HUBZone Program's 35% requirement." (emphasis added)). Moreover, it is worth noting that one of the factors analyzed by the SBA in *Metro Machine* was related to salary payments. *See* 305 F. Supp. 2d at 618 n.4 (listing one of the factors as "Does the company pay the employee wages and/or withhold employment taxes and/or provide employment benefits?"). Here, the SBA could easily have framed its discussion as a review of the paid wages factor and would have ultimately reached the same conclusion. The court declines to hold that the agency was required to specifically reference the taxable nature of paid wages in order to ensure the validity of its conclusions.

Finally, the court agrees with the United States that the SBA's well-reasoned decision in this case does, in fact, support and promote the underlying goals of the HUBZone program. Plaintiff may be correct that, in some cases, a worker's inability to enter into a deferred compensation agreement with a HUBZone concern will hinder his or her ability to secure work with that concern. However, the extent to which such a restriction will undermine the goals of the HUBZone program will likely be slight in comparison with the potential for abuse which would arise from a contrary rule for HUBZone contractors. Further, although the SBA may have the

means to track the salary histories of HUBZone workers, the court agrees with the agency that it would be impractical to expect the SBA to do so. For these reasons, the court agrees with defendant that the SBA's decision is a reasonable and effective means by which to promote the goals of the HUBZone program. Moreover, even if the court did not agree with the agency's conclusions, a reversal of its findings still would not be appropriate because the SBA decision is a reasonable interpretation of its own statute. *Thomas Jefferson University*, 512 U.S. at 515 (requiring deference to an agency interpretation of its own regulation, where that interpretation is reasonable).

For all of these reasons, the court concludes that the SBA's interpretation of its own regulation was not inconsistent or plainly erroneous, and is thus entitled to substantial deference. *Long Island Care at Home*, 127 S. Ct. at 2349. The court must also afford substantial deference to the SBA's decision because it was clearly based on a reasoned consideration of the issues presented. *See id.* Under that deferential standard, the SBA's decision was reasonable, and not "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Bannum*, 404 F.3d at 1351 (citation omitted). Plaintiff's claim that the decision was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law is without merit.

### B. Proper Evaluation of Proposals

Plaintiff also argues that, by disqualifying Aeolus, the agency violated 41 U.S.C. § 253b(a), which provides that agencies must evaluate proposals and award a contract based solely on the factors set forth in the solicitation. Pl.'s Mot. at 17-18. Aeolus claims that, because the solicitation and HUBZone regulations referenced therein were silent on the issue of deferred compensation, it was erroneous for the Army to disqualify plaintiff based on what plaintiff alleges is a "new rule . . . created after the solicitation was issued." *Id.* at 18. Defendant disagrees. The United States argues that, in rendering its decision, the SBA did not create any new or unexpected solicitation requirements, but instead, merely enforced the HUBZone program requirements set forth in the solicitation. Def.'s Mot. at 27 ("SBA's determination that Aeolus was not an eligible HUBZone SBC for the Army contract was not based upon a 'new rule,' but its interpretation of the regulatory requirements, which were specifically identified in the solicitation.") (citing AR at 112).

The court agrees with defendant. It is true that 41 U.S.C. § 253b(a) requires that "an executive agency shall evaluate sealed bids and competitive proposals, and award a contract, based solely on the factors specified in the solicitation." *Id.* However, that statute addresses the manner in which a procuring agency (here, the Army) must evaluate proposals received in response to a solicitation, and not the manner in which the SBA must determine eligibility for small business preferences or set-asides. In addition, the claim is factually unsupportable. The solicitation issued in this case clearly stated that the Army contract was structured as a 100% set-aside for HUBZone small business concerns. AR at 79. The record is uncontroverted that plaintiff was on notice of that fact, as well as on notice of all of the requirements for HUBZone program eligibility, including the 35% residency requirement. The SBA's decision in this case did not retroactively create a new eligibility requirement, but instead, represented the SBA's enforcement of one of the requirements already in place. Plaintiff's claim is therefore without merit.

### C. Notice-and-Comment Rulemaking

Plaintiff argues that the AA/HUB abused his discretion by, in effect, using protests of the contract award as an opportunity to narrow the definition of "employee," rather than formally amending 13 C.F.R. § 126.103's definition of that term. Pl.'s Mot. at 18-20; *see id.* at 16 (stating that the SBA's "decision carries the weight of a regulation"). In response, the United States contends that no formal amendment to the regulation was required here because "[w]hile notice-and-comment rulemaking can be applicable to agency interpretations, it is so only when an agency intends to 'adopt[] *a new position inconsistent with* . . . existing regulations.'" Def.'s Mot. at 28 (quoting *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 100 (1995)) (emphasis in original). Defendant argues that in this case, the existing regulations were silent on the issue of deferred compensation and its effect on "employee" status, and that this protest presented the agency's first opportunity to interpret and articulate its position on the matter. The government insists that the decision was not inconsistent with any regulation or prior agency interpretation, and that no formal rulemaking was required.

Although it is not altogether clear in the briefing, it appears that plaintiff's essential argument here is that the SBA erred when it chose to address the problem presented by this protest through adjudication rather than formal rulemaking. That contention is problematic, however, because the ability of federal agencies to resolve disputes through adjudicatory procedures is well entrenched. *See S.E.C. v.*

*Chenery Corp.*, 332 U.S. 194, 201-02 (1947). Furthermore, "[i]t is hornbook administrative law that the choice of proceeding by individual adjudication or general rulemaking lies largely within the agency's discretion." *Nat'l Small Shipments Traffic Conference, Inc. v. I.C.C.*, 725 F.2d 1442, 1447 (D.C. Cir. 1984) (citing *Chenery*, 332 U.S. at 203); *Atochem N. Am., Inc. v. United States Envt'l Prot. Agency*, 759 F. Supp. 861, 868-69 (D.D.C. 1991) ("Just as the Supreme Court has insisted that courts defer to reasonable agency constructions of organic statutes, it has emphasized that the choice between rulemaking or adjudication 'lies primarily in the informed discretion of the administrative agency,' unless Congress mandates otherwise.") (quoting *Chenery*, 332 U.S. at 203)). In addition,

> [t]rial-like procedures are particularly appropriate for retrospective determination of specific facts about individual parties. In certain cases, due process may even require such procedures. Notice-and-comment procedures, on the other hand, are especially suited to determining legislative facts and policy of general, prospective applicability.

*National Small Shipments*, 725 F.2d at 1447-48 (citations omitted). In light of the fact that "the choice between rulemaking and adjudication should be left to agency discretion, subject to court review for abuses of discretion," *Atochem*, 759 F. Supp. at 869 (citing *Chenery*, 332 U.S. at 203), the court declines to hold that the SBA erred in this instance. The protests before the SBA required the agency to evaluate specific facts related to Aeolus and its relationship with Mr. Louisa; under those particular circumstances, the agency's decision to do so via adjudication was clearly reasonable.[12]

Further, it is appropriate to note that the provisions of the APA, which require agencies to engage in formal rulemaking, do not appear to apply to the

---

[12];/ The court notes further that the protracted mechanism of notice-and-comment rulemaking would offer no assistance to the SBA in fulfilling its mission of quickly resolving HUBZone protests after a government contract has been awarded. *See* 13 C.F.R. § 126.803(b)(1) (2007) (requiring the SBA to "determine the HUBZone status of the protested HUBZone SBC within 15 business days after receipt of a protest"). Thus, as a practical matter, the SBA's choice of adjudication was not only eminently reasonable, it was the only route available given the time constraints.

decision rendered by the SBA. There is no question that, under that statute, federal agencies which seek to promulgate a new rule must publish a notice of proposed "rule making" in the Federal Register. 5 U.S.C. § 553(b) (2000). In addition, they must "allow interested persons to participate in the process by providing comments on the proposed rules." *Tunik v. Merit Sys. Prot. Bd.*, 407 F.3d 1326, 1341 (Fed. Cir. 2005) (citing 5 U.S.C. § 553(c)). However, the APA "expressly defines 'rule making' as the 'agency process for formulating, amending, or *repealing* a rule.'" *Id.* at 1342 (quoting 5 U.S.C. § 551(5)) (emphasis in original). "[I]nterpretative rules, general statements of policy, or rules of agency organization, procedure, or practice" are exempt from notice-and-comment rulemaking. 5 U.S.C. § 553(b)(3)(A); *Splane v. West*, 216 F.3d 1058, 1063 (Fed. Cir. 2000). The distinction between substantive and interpretive rules has been explained as follows:

> "[S]ubstantive rules" [are] those that effect a change in existing law or policy or which affect individual rights and obligations. "Interpretive rules," on the other hand, clarify or explain existing law or regulation and are exempt from notice and comment under section 553(b)(3)(A) . . . . "[A]n interpretive statement simply indicates an agency's reading of a statute or a rule. It does not intend to create new rights or duties, but only reminds affected parties of existing duties."

*Paralyzed Veterans of Am. v. West*, 138 F.3d 1434, 1436 (Fed. Cir. 1998) (quoting *Orengo Caraballo v. Reich*, 11 F.3d 186, 195 (D.C. Cir. 1993)) (other citations omitted); *see Splane*, 216 F.3d at 1063. In other words, a decision that "represents the agency's reading of statutes and rules rather than an attempt to make new law or modify existing law" is deemed to be interpretive, and may be effectuated through less formal procedures. *Splane*, 216 F.3d at 1063. Even if plaintiff were correct that the SBA's decision announced a new rule, a conclusion with which this court disagrees, that "rule" could only have been interpretive, and would not have required formal rulemaking.

Here, plaintiff claims that the SBA's decision contradicts the existing HUBZone regulations because it went beyond the text of 13 C.F.R. § 126.103, which only explicitly excludes three types of workers from its scope. However, as explained earlier, the plain language of the regulation does not declare those

categories of workers to be the *only* types of workers which may be excluded from the definition. Instead, the list merely set forth three examples of workers not qualified to be deemed "employees." In addition, by including the phrase "the totality of the circumstances" in the text of the regulation, the SBA left open an avenue though which the agency could explore whether a particular worker qualified as an "employee" under the regulations, based on the particular facts presented. *See id.* There is no basis for plaintiff's contention, therefore, that the SBA's finding in this case contradicted the existing regulation such that the agency was required to engage in formal rulemaking in order to amend it. Moreover, there is no question that Aeolus was on notice from the outset of its involvement in the HUBZone program, that 35% of its employees were required to reside in HUBZones. In the court's view, the AA/HUB's decision merely held plaintiff to its obligation to meet that requirement, rather than creating a new requirement altogether. *Paralyzed Veterans*, 138 F.3d at 1436.

Additionally, plaintiff appears to argue that because the SBA is currently in the process of creating a new formal rule that will change the definition of "employee" in 13 C.F.R. § 126.103, this rulemaking activity shows that adjudication was not the appropriate means for addressing the deferred compensation dispute at issue in this bid protest. *See* Pl.'s Mot. at 18 ("In the event the SBA saw a need to better define the requirements of an employee to be eligible for the HUBZone projects, the SBA could do so on future projects [by] going through the Administrative Procedure Act process [and] [i]n fact, the SBA was doing just that . . . ."); Pl.'s Reply at 10 ("[T]he changes sought to be made to the definition of "employee" in both cases [, *i.e.*, the SBA's decision in this case and the ongoing rulemaking activity] parallel."). Although plaintiff cites no authority forbidding "parallel" adjudication and rulemaking with respect to defining a term used in a regulation, plaintiff argues that when the SBA utilized adjudication to resolve the HUBZone status appeals at issue in this case, this adjudication somehow "circumvent[ed] the legal process for promulgation of agency regulations." Pl.'s Mot. at 20. Plaintiff concludes that the SBA abused its discretion when it chose to use adjudication rather than formal notice-and-comment rulemaking. *Id.*

Even if the rulemaking activity cited by plaintiff addresses the deferred compensation issue as part of its re-definition of the term "employee," an assertion

that defendant disputes,[13] plaintiff has cited no authority, and the court has found none, which supports plaintiff's argument that an agency may not interpret its own regulations while adjudicating a protest, and at the same time carry on more general rulemaking activities to address prospective application of its regulations. There is no dispute that an agency such as the SBA has discretion to engage in either adjudication or rulemaking, as best suits the situation with which it is confronted. *See, e.g.*, *Y.S.K. Constr. Co. v. United States*, 30 Fed. Cl. 449, 456 (1994) (stating that "Congress has delegated the power to perform both [rulemaking and adjudication] to SBA."). The court has determined that adjudication of the deferred compensation issue was a proper means of interpreting 13 C.F.R. § 126.103, *see supra*, and, indeed, that adjudication was the only appropriate means for the SBA to resolve the HUBZone status protests before it, *see supra* note 12. If the SBA chose to pursue changes to the definition of "employee" in 13 C.F.R. § 126.103 at the same time, or subsequent thereto, the court is unaware of any authority insisting that such rulemaking activity stays the power of the SBA to adjudicate protests before it. *Cf. Chenery*, 332 U.S. at 202 ("[A]n administrative agency must be equipped to act either by general rule or by individual [adjudication]. To insist upon one form of action to the exclusion of the other is to exalt form over necessity."). For all of the above-cited reasons, plaintiff's argument that the SBA improperly chose to interpret a rule through adjudication, rather than through notice-and-comment rulemaking, is rejected.

In a related argument first appearing in plaintiff's reply brief, plaintiff attacks the SBA's decision on the basis that it is an impermissibly vague *de facto* regulation.[14] *See* Pl.'s Reply at 5 (stating that "the SBA's decision is capricious

---

[13]/ Defendant asserts that the proposed regulation does not address non-owner deferred compensation arrangements. Def.'s Reply at 13. The proposed regulation references the circumstances of "persons that receive no compensation." HUBZone and Government Contracting, 72 Fed. Reg. 3750, 3752-53 (proposed Jan. 26, 2007) (to be codified at 13 C.F.R. Part 126) ("SBA's proposed definition of the term 'employee' provides that volunteers or any person who does not receive compensation for work performed for the HUBZone concern are not considered employees of the concern."). Because the precise limits of the proposed definition of "employee" for HUBZone purposes is not relevant to the subject matter, the court declines to issue dicta on this topic.

[14]/ Aeolus's moving brief also argues that the SBA's decision is capricious because it is ambiguous and vague, and will permit a variety of outcomes in future HUBZone status protests.
(continued...)

because the SBA decision is without definition as to when an employee must be paid in order to comply with the definition of 'employee' for HUBZone purposes"). Aeolus contends that the agency's "decision to add a new category of employees to the list of employees not qualified to be HUBZone employees according to 13 C.F.R. § 126.103, without defining that category sufficiently for a judge to determine whether one falls within or outside the category, [was] unconstitutional." Pl.'s Reply at 8. Plaintiff cited no authority for its proposal that the SBA's adjudication of a HUBZone status protest could be considered to be a *de facto* regulation. As the court has just discussed, the adjudication here was the proper mechanism for deciding the issue before the SBA, and nothing remotely related to the promulgation of a regulation occurred in the SBA's decision. Because there was no *de facto* regulation here, plaintiff's argument concerning an impermissibly vague *de facto* regulation must be rejected.[15]

### D. Plaintiff's Allegation of Factual Error in the SBA's Decision

Finally, plaintiff alleges that the AA/HUB's decision was based on an erroneous reading of the facts relevant to this protest. Plaintiff complains that the agency ignored Aeolus's written contract with Mr. Louisa, which ensured that Mr. Louisa would be paid at a later date. According to plaintiff, the SBA based its decision on an assumption that Mr. Louisa had agreed to work for no pay, when in fact, Mr. Louisa was earning compensation and had merely agreed to receive it at a later date. Pl.'s Mot. at 20. Similarly, Aeolus attacks the AA/HUB's finding that deferred payment is no more than "'speculative promises of future compensation

---

[14](...continued)
Pl.'s Mot. at 15-16. However, the agency's decision was carefully tailored to the facts presented in this protest and quite clear. In the written decision, the AA/HUB detailed the specific facts which compelled his conclusions. For example, he stated explicitly that the limitation announced in the decision was applicable only to "non-owners." The court finds the SBA's decision to be reasonable, unambiguous and not capricious. Moreover, the court agrees with defendant (and in fact, plaintiff concedes) that, even if a future HUBZone contractor might be disadvantaged by uncertainty in the SBA's decision, Aeolus does not have standing to pursue a claim which addresses that uncertainty.

[15]/ Although plaintiff belatedly cited authority related to its argument that an impermissibly vague regulation may be overturned, *see* Pl.'s September 19, 2007 Mot. for Oral Argument, these cases are inapposite because no regulation is presented here for the court's review.

that may not be paid,'" and contends that this finding was "a distortion of the plain reading of the employment contract." Pl.'s Mot. at 21 (citing AR at 1810). Plaintiff argues that in this case there was a written employment contract, including a personal guarantee of payment by the CEO, which reduced the speculative nature of the compensation arrangement. *Id.*

In the court's view, these arguments misconstrue the SBA's decision. Select portions of the AA/HUB's written decision, taken out of context, may arguably be interpreted as stating that Mr. Louisa was not being paid for his work. When read in its entirety, however, the decision clearly shows that the SBA recognized and appreciated the import of Mr. Louisa's contract with Aeolus. Further, the agency found that the employment contract between the parties did not alleviate the concerns created by Mr. Louisa's lack of contemporaneous pay. That finding did not center on a concern that Mr. Louisa would not ultimately be paid, but rather, on the fact that it would be difficult for the agency to confirm such pay.

For all of the foregoing reasons, the court finds that plaintiff's allegations of error are without merit. Aeolus has not shown that the SBA's conduct in this action was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. 5 U.S.C. § 706(2)(A). Accordingly, plaintiff's motion for judgment on the administrative record is denied, defendants' cross-motions are granted, and the SBA's decision is affirmed. Plaintiff's complaint and the requests therein for injunctive and other relief are dismissed.

## CONCLUSION

Accordingly, it is hereby **ORDERED** that

(1) Plaintiff's Motion for Judgment on the Administrative Record, filed August 23, 2007, is **DENIED**. The Cross-Motions for Judgment on the Administrative Record filed by defendant and intervenor-defendant on August 31, 2007 are **GRANTED**;

(2) The Clerk's Office is directed to **ENTER** final judgment in favor of defendants, **DISMISSING** the complaint, with prejudice;

(3) On or before **November 2, 2007**, counsel for the parties shall **CONFER** and **FILE** with the Clerk's Office a **redacted copy** of this

opinion, with any material deemed proprietary marked out and enclosed in brackets, so that a copy of the opinion can then be prepared and made available in the public record on this matter; and

(4) Each party shall bear its own costs.

/s/ Lynn J. Bush
LYNN J. BUSH
Judge